UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSANNE ASPLEY, | Case No. 22-CV-2005 (PJS/JFD) |
| Plaintiff, | |
| v. | |
| TIM WALZ, Governor of Minnesota; THE STATE OF MINNESOTA; and JAN MALCOLM, Minnesota Department of Health, | ORDER |
| Defendants. | |

Susanne Aspley, pro se.

Benjamin Harringa, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendants.

LaVonne Aspley died on May 12, 2020, after being infected with COVID-19 in the Excelsior Estates Nursing Home ("Excelsior Estates") in Excelsior, Minnesota. Following LaVonne's death, plaintiff Susanne Aspley (LaVonne's daughter) filed this lawsuit against the State of Minnesota, Governor Tim Walz, and Commissioner of Health Jan Malcolm. Aspley[1] alleges that Walz's and Malcolm's mismanagement of the COVID-19 pandemic deprived her mother of her right to life under the Fourteenth Amendment. This matter is now before the Court on defendants' motion to dismiss.

---

[1] To avoid confusion, the Court will refer to plaintiff by her last name (Aspley) and to her mother by her first name (LaVonne).

I.  BACKGROUND

*A.  Government COVID Response in Nursing Homes*

On April 8, 2020, Walz signed Executive Order ("EO") 20-32,[2] which was intended to ensure that healthcare providers in Minnesota could respond to the COVID-19 pandemic quickly and safely.  In part, EO 20-32 authorized the Commissioner of Health to "temporarily delay, waive, or modify [certain] provisions and applicable rules, provided that the delay, waiver, or modification does not endanger the public health, welfare, or safety of Minnesotans."  On May 7, 2020, pursuant to EO 20-32, the Minnesota Department of Health ("MDH") issued a "Nursing Home Capacity Waiver,"[3] which allowed "nursing home beds to be used to relocate patients from hospitals or other settings to nursing homes."  Then on June 2, 2020, MDH issued a "Nursing Home Non-Layaway Bed Waiver,"[4] which further allowed "nursing homes to quickly expand their number of beds in order to relocate patients from hospitals or other settings to nursing homes that **do not** have a layaway bed option."  (Emphasis in original.)

---

[2] Available at https://mn.gov/governor/assets/1a.%20EO%2020-32%20Final._tcm1055-427412.pdf.

[3] Available at https://www.health.state.mn.us/facilities/regulation/nursinghomes/docs/nursinghomewaiver.pdf.

[4] Available at https://www.health.state.mn.us/facilities/regulation/nursinghomes/docs/nonlayawaybedwaiver.pdf.

On March 13, 2020—that is, prior to any of the state actions described above—the Centers for Medicare and Medicaid Services ("CMS") issued a memorandum entitled "Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes."[5]  The CMS guidance provided that "[a] nursing home can accept a resident diagnosed with COVID-19 and still under Transmission-Based Precautions for COVID-19 as long as the facility can follow CDC guidance for Transmission-Based Precautions."

### B.  Plaintiff's Lawsuit

LaVonne moved to Excelsior Estates in October 2019 and was living there when the COVID-19 pandemic began in the spring of 2020.  Compl. ¶¶ 20, 29.  On May 1, 2020, LaVonne called Aspley to complain that new COVID-positive patients had moved into Excelsior Estates.  *Id.* ¶ 29.  Four days later, Aspley received a call from Excelsior Estates to inform her that LaVonne had tested positive for COVID.  *Id.* ¶ 30.  LaVonne died from COVID-related symptoms on May 12, 2020, at the age of 87.  *Id.* ¶ 32.

Aspley filed this pro se lawsuit on August 15, 2022, seeking damages on behalf of LaVonne's estate[6] under 42 U.S.C. § 1983.  She alleges that the State of Minnesota, Walz,

---

[5]Available at https://www.cms.gov/files/document/qso-20-14-nh-revised.pdf.

[6]For purposes of this motion, the Court assumes that the Minnesota probate code authorizes Aspley to sue on behalf of the estate, although the matter is not free from doubt.

and Malcolm deprived LaVonne of her right to life without due process in violation of the Fourteenth Amendment because defendants did not prohibit Minnesota nursing homes from accepting transfers of COVID-positive patients from hospitals. Defendants moved to dismiss the complaint on September 7, 2022, ECF No. 9, and the Court held a hearing on January 13, 2023. For the reasons that follow, the Court grants defendants' motion.

## II. ANALYSIS

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Du Bois v. Bd. of Regents*, 987 F.3d 1199, 1202 (8th Cir. 2021). Although the factual allegations in the complaint need not be pleaded in detail, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Aspley is understandably angry about some of the decisions made by defendants in early 2020. Nevertheless, courts are not equipped to remedy every bad decision made by a political leader—even egregiously bad decisions. *Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1032 (8th Cir. 2007) ("[T]he Fourteenth Amendment was not designed to provide relief in all cases where the State's functionaries fail to take action that might

have averted a serious harm."). Unfortunately for Aspley, there are at least three reasons why she cannot prevail in this lawsuit:

*First*, Aspley filed this lawsuit pro se. While it is generally true that parties may "plead and conduct their *own* cases personally or by counsel," 28 U.S.C. § 1654 (emphasis added), it is also true that non-attorneys may not represent others in federal court. *See Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005). At the hearing on defendants' motion, Aspley confirmed that she is not the sole beneficiary of LaVonne's estate. Therefore, in bringing this suit on behalf of the estate, she seeks to represent not only her interests but the interests of the other beneficiary. She cannot do that without a law license. *See id.*

*Second*, even if Aspley were permitted to represent her mother's estate in this lawsuit, her claims against the State and against Walz and Malcolm in their official capacities would have to be dismissed under the Eleventh Amendment. "The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself."); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (holding that state officials

sued in their official capacities cannot be held liable under § 1983). As the Court explained at the hearing, the only potential waiver of sovereign immunity Aspley has identified is the Federal Tort Claims Act, but that law waives the sovereign immunity of the federal government, not the sovereign immunity of the State of Minnesota or any other state.

*Third*, even if Aspley's complaint were to be generously construed to state a claim against Walz and Malcolm in their individual capacities, her claims against them would have to be dismissed because Walz and Malcolm were under no constitutional obligation to act to prevent harm. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989) ("[T]he State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to [act]."); *Lee*, 472 F.3d at 1029 ("[N]either the text nor the history of the Clause supports the proposition that the State must 'guarantee certain minimal levels of safety and security.'" (quoting *DeShaney*, 489 U.S. at 195–96)). The Fourteenth Amendment is "principally a restraint on the power of government to act" and generally does not impose affirmative obligations on state officials. *Lee*, 472 F.3d at 1029. In other words, in order to state a constitutional claim against Walz and Malcolm in their individual capacities, Aspley must complain that her mother was harmed by an affirmative action that they took, rather than by their failure to take an action that would have protected her.

For the most part, Aspley seeks to hold defendants liable for failing to prohibit nursing homes from accepting COVID-positive patients. That claim is not viable, for the reasons the Court has explained. Aspley does, however, also argue that defendants should be held liable for an affirmative act. In particular, Aspley argues that defendants' issuance of the nursing-home capacity waivers pursuant to EO 20-32 was an affirmative act that violated her mother's constitutional rights because those waivers increased the risk that her mother would become infected by COVID-19 at Excelsior Estates. But the nursing-home capacity waivers cannot give rise to liability on defendants' part because those waivers did not take effect until *after* LaVonne had already been infected with COVID, and thus those waivers played no role in her death. Moreover, even if the waivers had taken effect before LaVonne was infected, the waivers did not *require* Excelsior Estates—or any other nursing home—to accept COVID-positive patients. They only *allowed* a nursing home to do so *if* that nursing home was in compliance with federal guidelines.

For these reasons, the Court grants defendants' motion to dismiss.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' Motion to Dismiss [ECF No. 9] is GRANTED and the complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 27, 2023                                        s/Patrick J. Schiltz
                                                                Patrick J. Schiltz, Chief Judge
                                                                United States District Court